**Entered on Docket**
**October 16, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

OCT 1 6 2007

CLERK
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                  ] Case No. 99-50794-ASW
                                       ]
Patricia Vignola                       ] Chapter 13
                                       ]
                    Debtor.            ]
_____]

MEMORANDUM DECISION
ON DEBTOR'S OBJECTION TO CLAIM OF FTB

Before the Court is the objection by Debtor Patricia Vignola ("Debtor") to the claim of the California Franchise Tax Board ("FTB"). Debtor objects to the FTB's claim relating to unpaid California state income taxes for tax year 1991 on the ground that the claim was improperly calculated. Specifically, the dispute involves the computation of interest owing on the 1991 taxes. Debtor is represented by Susan D. Silveira, Esq. of the Silveira Law Offices. The FTB is represented by Deputy Attorney General Paul D. Gifford.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## STATEMENT OF FACTS

The relevant facts are undisputed.  Debtor filed her California state income tax return for fiscal year 1991 on or about June 15, 1992.  The 1991 return was either incomplete or inaccurate, and resulted in the erroneous issuance by the FTB of a refund of $451.00 to Debtor.

On April 15, 1993, Debtor filed an amended return for tax year 1991.  The amended return showed a balance due of $7,310, plus interest and penalties for the late filing.  The amended return was not accompanied by payment, and resulted in a balance due of approximately $6,400.[1]

In approximately 1995, the Internal Revenue Service ("IRS") audited Debtor's 1991 federal income tax return.  The IRS audit resulted in a substantial increase in Debtor's taxable income for fiscal year 1991.  Debtor failed to report the IRS changes to the FTB.[2]  The information concerning the IRS audit was eventually received by the FTB.  The FTB reviewed the audit information and issued a determination regarding Debtor's 1991 state income tax liability.  On January 8, 1996, the FTB mailed Debtor a Notice of Proposed Assessment ("NPA") for 1991 which set forth Debtor's total

---

[1] The difference between the amount of tax stated on the amended return and the balance due after the return was filed, despite no payment being remitted, is accounted for by the application of a withholding credit.

[2] A taxpayer must report any change or correction to the taxpayer's gross income made by the IRS within six months.  Cal. Rev. & Tax. Code § 18622.

state tax liability for 1991 as $38,066.[3] The NPA separately identified the amount of the tax liability that was specifically attributable to the IRS audit information as $25,342, plus accrued interest and penalties.

Debtor filed a Chapter 13 bankruptcy petition on July 15, 1996 (case number 96-33063). On September 10, 1996, the FTB filed a claim in Debtor's bankruptcy case in the amount of $51,770.99, relating to tax years 1991 and 1993. Debtor objected to the FTB's claim, but the bankruptcy was dismissed on January 7, 1999 prior to any resolution of the claim objection. During the pendency of the bankruptcy, Debtor paid a total of $8,847.62 on account of the 1991 state income tax liability.

Debtor filed the instant Chapter 13 case on February 2, 1999. In March 1999, the FTB filed a proof of claim in this case, seeking, in part, $48,916.70 in unsecured priority taxes for tax year 1991. On July 6, 2004, the FTB received a payment in the amount of $48,916.70, the full amount of the FTB's asserted claim, from the Chapter 13 Trustee on Debtor's behalf. Debtor did not object to the FTB's claim or its payment in full by the Chapter 13 Trustee. Debtor's Chapter 13 discharge was issued on August 17, 2004.

Debtor reopened this case in March 2005 for the purpose of objecting to the FTB's claim. Debtor filed her initial objection to the FTB's claim on April 5, 2005. The FTB requested a hearing.

---

[3] "If a taxpayer fails to report a change or correction by the Commissioner of Internal Revenue or other officer of the United States or other competent authority or fails to file an amended return as required by Section 18622, a notice of proposed deficiency assessment resulting from the adjustment may be mailed to the taxpayer at any time." Cal. Rev. & Tax Code § 19060(a).

Debtor filed an amended objection to claim on September 16, 2005 (the "Objection").

On March 19, 2007, the Court entered an Order on Reduction of Claim of Franchise Tax Board and Return of Overpayment to Debtor (the "March 19 Order"). This order memorialized an agreement reached by the parties at the February 26, 2007 status conference regarding the Objection. See also Joint Prehearing Statement on Amended Objection to Claim of Franchise Tax Board, filed October 10, 2006, 1:23-26. The March 19 Order partially resolved the Objection as follows:

(1)    The FTB's priority claim was reduced to $41,136.02 --
       $21,608.96 for taxes owing for 1991 and $19,547.09 for
       interest thereon;

(2)    The FTB was ordered to promptly release $7,780.65,
       plus interest from July 6, 2004, to Debtor. This
       amount represents the difference between the
       $48,916.70 previously paid to the FTB on July 6, 2004
       by the Chapter 13 Trustee and the $41,136.02 reduced
       amount of the claim.

II.

ISSUES PRESENTED

The Objection solely involves the computation of interest owing to the FTB with respect to Debtor's 1991 tax liability. Debtor does not dispute the principal amount of the taxes at issue. Debtor contends that the date used by the FTB for assessing interest on the unpaid 1991 tax, April 15, 1992, was incorrect. Debtor argues that the correct date is March 8, 1996 -- the date the NPA became final. If Debtor is correct, she is entitled to refund of $12,392.12 from the FTB. The FTB counters that the interest assessment date was proper, the claim was calculated

correctly, and Debtor is not entitled to any reimbursement.[4]

On May 21, 2007, the Court issued an Order Notifying Parties of Additional Authorities Re Debtor's Objection to Claim of Franchise Tax Board (the "May 21 Order"). The May 21 Order brought to the parties attention a body of administrative decisions by the California State Board of Equalization that speak to the question of the proper date for assessment of interest on a tax deficiency. These administrative decisions, as will be discussed below, support the FTB's position that interest on a deficiency assessment accrues from the date the tax return was due.

In response to the May 21 Order, Debtor has suggested there are two additional issues that the Court must decide:

---

[4] The Court notes that when this matter was first submitted to the Court for consideration, three separate issues were identified:

(1) What is the proper date for the assessment of interest on the FTB claim? ("Issue #1");
(2) May Debtor retroactively direct the allocation of payments made prior to the filing of the present Chapter 13 bankruptcy case? ("Issue #2");
(3) If so, were the pre-petition payments that Debtor wishes to allocate "voluntary" or "involuntary" under the law? ("Issue #3").

Order Re Supplemental Briefing on Debtor's Objection to Claim of Franchise Tax Board and Rescheduling Hearing, issued by the Court on December 15, 2006.

Issue #2 and Issue #3 noted above were subsequently resolved by the agreement of the parties. The $7,780.65 adjustment to the FTB's claim memorialized by the March 19 Order, reflects the FTB's recalculation of Debtor's 1991 tax liability after reallocating all of Debtor's prepetition payments to the principal amount owed for Debtor's 1991 tax liability. The FTB indicates this reallocation was made as an accommodation to Debtor in hopes of resolving this dispute, and does not represent the ordinary practice of the FTB. On March 29, 2007, the FTB sent the State Controller a request to issue a check to the Debtor for the sums specified in the March 19 Order. Declaration of Cesar Mena in Support of Franchise Tax Board's Opposition to Debtor's Motion for Damages, filed April 13, 2007, ¶¶4-6, 12.

    (1)   Whether the FTB's claim is entitled to priority status, based on Debtor's argument that if the 1991 assessment had occurred in a "timely fashion" it would have fallen outside the priority period; and

    (2)   Whether interest on the FTB's claim should be abated, "as it was by the Internal Revenue Service", pursuant to Cal. Rev. & Tax. Code § 19104(a)(3).

Debtor's Statement of Clarification Regarding Remaining Issues to be Resolved in Objection to Claim of Franchise Tax Board, filed June 4, 2007 ("Debtor's Statement of Clarification").

III.

JURISDICTION

This Court has jurisdiction over this matter pursuant to Bankruptcy Code § 505(a)(1), which provides that: "the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1).

IV.

ANALYSIS

A.   Proper Date of Assessment of Interest

The primary issue in this case is whether interest on Debtor's unpaid 1991 state income tax began to accrue, as the FTB contends, on April 15, 1992, or not until March 8, 1996, as Debtor contends. The parties disagree as to which sections of the California Revenue and Taxation Code control.

MEMORANDUM DECISION ON DEBTOR'S
OBJECTION TO CLAIM OF FTB

1    According to the FTB, the applicable provision is Cal. Rev. &

2    Tax. Code § 19101(a), which states, "If any amount of tax...is not

3    paid on or before the last date prescribed for payment, interest on

4    that amount at the adjusted annual rate established under section

5    19521 shall be paid for the period from that last date to the date

6    paid." Section 19101(b) provides:

> For purposes of this article, the last date prescribed for
> payment of the tax shall be determined under Chapter 4
> (commencing with Section 19001), with the application of
> the following rules:
>
> (1) The last date prescribed for payment shall be
> determined without regard to any extension of
> time for payment or any installment agreement
> entered into under Section 19008.
>
> (2) The last date prescribed for payment shall be
> determined without regard to any notice and
> demand for payment issued, by reason of jeopardy
> as provided in Article 5 (commencing with Section
> 19081), prior to the last date otherwise
> prescribed for that payment.
>
> (3) In all other cases in which the last date for
> payment shall be deemed to be the date the
> liability for tax arises (and in no event shall
> be later than the date notice and demand for the
> tax is made by the Franchise Tax Board).

19   Cal. Rev. & Tax Code § 19101(b).

20   Consistent with the directions of Cal. Rev. & Tax Code

21   § 19101(b), the "last date prescribed for payment" is to be

22   determined with reference to § 19001. Section 19001 is entitled

23   "Due Date" and states, in pertinent part, that:

> the tax...shall be paid at the time and place fixed for
> filing the return (determined without regard to any
> extension of time for filing the return).

26   The FTB contends that the time for filing Debtor's 1991 California

27   state income tax return was April 15, 1992, and therefore, that

28

1  date is the "last date for prescribed for payment." Accordingly,

2  pursuant to 19101(a), interest is properly assessed from that date.

3      Debtor concedes that, under ordinary circumstances, interest on

4  unpaid 1991 state income tax begins to run on April 15, 1992.

5  Debtor argues, however, that interest on a deficiency assessment

6  can only accrue from the date the liability for the tax arises.

7  The parties agree that the tax at issue is in fact a deficiency

8  assessment. The NPA was issued on January 8, 1996. Pursuant to

9  Cal. Rev. & Tax. Code § 19042, the NPA becomes final after 60 days,

10 if no protest is filed by the taxpayer. Debtor, therefore, asserts

11 that her liability for the tax at issue in this case did not arise

12 until March 8, 1996.

13     Debtor contends that the FTB's reliance on 19101(a) is

14 misplaced because the tax at issue relates to a deficiency

15 assessment, and according to Debtor, deficiency assessments are

16 excepted from the operation of 19101(a) by 19101©. Section 19101©

17 states:

18     Except as provided in this article: (1) Interest prescribed
    under this article on any tax shall be paid upon notice and

19     demand, and shall be assessed, collected and paid in the
    same manner as taxes. Any reference in Part 10 (commencing

20     with Section 17001), Part 11 (commencing with Section
    23001), or this part *(except Article 3 (commencing with*

21     *Section 19031), relating to deficiency assessments)* to any
    tax imposed by Part 10 (commencing with Section 17001) or

22     Part 11 (commencing with Section 23001) shall be deemed
    also to refer to interest imposed by this article on that

23     tax.

24 Cal. Rev. & Tax. Code § 19101© (emphasis added).

25     Debtor argues that the italicized portion of the statute noted

26 above refers the reader out of § 19101(a) for determining the

27 appropriate date for assessment of interest when a deficiency

28

assessment is involved.  On its face, Debtor's reading of 19101©

appears to have merit.

Debtor argues that interest on deficiency assessments is not controlled by Cal. Rev. & Tax Code § 19101(a) and that such interest may only be assessed from the date the deficiency assessment becomes final.  Debtor asserts that following sections of the Cal. Rev. & Tax Code support this interpretation: (I) 19105, (ii) 19104, and (iii) 19114 and 19049 in tandem.  Debtor has not cited any authority applying these code sections in the manner she suggests.  Debtor's contentions are addressed in turn.

**(I) Section 19105**

Cal. Rev. & Tax. Code § 19105 provides:

In the case of an individual or fiduciary, the Franchise Tax Board shall not assess interest charges pursuant to Section 19101 for the period between 45 days after the date of final review of an audit determining an additional amount is owed and the date a notice of proposed deficiency assessment is sent to the taxpayer.

Debtor's reliance on this section is misplaced.  It is unquestioned that, in fact, the FTB did not conduct an audit of Debtor's state income tax return, and therefore the section, by its express terms, does not apply.  In any event, § 19105 speaks only to a potential 45-day suspension of interest accrual under certain specific circumstances, and does not provide authority for the relief sought by Debtor in this case -- which amounts to a request for abatement of interest for a period of nearly four years.[5]

---

[5] From April 15, 1992 to March 8, 1996.

1      **(ii) Section 19104**

2  Cal. Rev. & Tax Code § 19104 provides, in relevant part, as

3  follows:

4      (a) The Franchise Tax Board may abate all or any part of
       any of the following:

5

6          (1) Any interest on a deficiency or related to a
           proposed deficiency to the extent that interest
7          is attributable in whole or in part to any
           unreasonable error or delay by an officer or
           employee of the Franchise Tax Board (acting in
8          his or her official capacity) in performing a
           ministerial or managerial act.

9

10         (2) Any interest on a payment of any tax
           described in Section 19033 to the extent that any
           delay in that payment is attributable to an
11         officer or employee of the Franchise Tax Board
           (acting in his or her official capacity) being
12         dilatory in performing a ministerial or
           managerial act.

13

14         (3) Any interest accruing from a deficiency based
           on a final federal determination of tax, for the
           same period that interest was abated on the
15         related federal deficiency amount under Section
           6404(e) of the Internal Revenue Code, and the
16         error or delay occurred on or before the issuance
           of the final federal determination. This
17         subparagraph shall apply to any ministerial act
           for which the interest accrued after September
18         25, 1987, or for any managerial act applicable to
           a tax year beginning on or after January 1, 1998,
19         for which the Franchise Tax Board may propose an
           assessment or allow a claim for refund.

20
       (b) For purposes of subdivision (a):
21
           (1) Except as provided in paragraph (3), an error
22         or delay shall be taken into account only if no
           significant aspect of that error or delay can be
23         attributed to the taxpayer involved and after the
           Franchise Tax Board has contacted the taxpayer in
24         writing with respect to that deficiency or
           payment.

25

26  Cal. Rev. & Tax. Code § 19104.

27      Debtor asserts that the FTB delayed unreasonably for nearly one

28  year before sending the NPA.  Debtor bases this contention on the

fact that the IRS assessment on which the FTB based its issuance of the NPA was issued on February 6, 1995. Therefore, the Debtor asserts, the Court should exercise its equitable discretion under § 105 to abate interest from April 15, 1992 to March 8, 1996.

The Court finds this contention without merit. Initially, the language of § 19104 is discretionary on the part of the FTB. As an evidentiary matter, there is no evidence before the Court regarding when the FTB became aware of the results of the IRS audit, and therefore Debtor's assertion of a one year delay by the FTB is not evident on the record. In addition, the Debtor herself was under a duty imposed by state law to report the changes made by the IRS to the FTB, which she failed to do. Cal. Rev. & Tax. Code § 18622. Accordingly, the Court finds that Debtor herself was responsible for a significant aspect of the delay, and, therefore, Debtor has not demonstrated that she qualifies for abatement under § 19104 pursuant to the exception set forth in § 19104(b). Furthermore, the express terms of § 19060(a) provide that, "[i]f a taxpayer fails to report a change or correction by the [the IRS] ... a notice of proposed deficiency assessment resulting from the adjustment may be mailed to the taxpayer *at any time*." Cal. Rev. & Tax. § 19060(a) (emphasis added). In any event, the FTB issued the NPA within the applicable statute of limitations after receiving the information concerning the IRS audit. The Court finds that, on the facts of this record, the delay between the time the FTB received the IRS audit information and when the FTB issued the NPA, to the extent any delay occurred, was not unreasonable.

1    **(iii) Sections 19114 and 19049**

2    Cal. Rev. & Tax. Code § 19114 states: "Interest prescribed

3    under this article on any tax may be assessed and collected at any

4    time during the period within which the tax to which the interest

5    relates may be collected." Debtor's argument regarding this

6    section presupposes that the tax relating to the January 1996 NPA

7    could only have been collected beginning on March 8, 1996, the date

8    the NPA became final under § 19042. Debtor's support for this

9    proposition is Cal. Rev. & Tax. Code § 19049, which provides:

> When a deficiency is determined and the assessment becomes
> final, the Franchise Tax Board shall mail notice and demand
> to the taxpayer for the payment thereof. The deficiency
> assessed is due and payable at the expiration of 10 days
> from the date of the notice and demand.[6]

13   Debtor's argument equates the language of 19049 stating that a

14   deficiency is "due and payable" with the language in 19114

15   regarding "the period within which the tax to which the interest

16   relates may be collected."

17   The FTB responds to this argument by asserting that a

18   deficiency assessment is not treated differently from "the tax" for

19   purposes of assessment of interest. According to the FTB, Debtor's

20   argument rests on the faulty premise that the deficiency notice,

21   sent January 8, 1996, represents a new and distinct liability.

22   This premise is incorrect as a matter of law. A taxpayer's

23   liability for a deficiency is "part and parcel of his liability for

24   the total tax. In fact, the word 'deficiency' negatives any

25

26   _____

27   [6] This reflects the language of the section prior to its
     amendment in 1997. That amendment changed the time period from 10
     to 15 days for notices issued on or after January 1, 1998. Cal.

28   Rev. & Tax. Code § 19049(b). Since the NPA in this case was issued
     before January 1, 1998, the old statute controls.

MEMORANDUM DECISION ON DEBTOR'S
OBJECTION TO CLAIM OF FTB

1    concepts of a new and distinct liability." <u>Mudd v. McColgan</u>, 30

2    Cal.2d 463, 467 (1947).

3        Courts charged with interpreting an ambiguous statute must

4    accord great weight to its administrative construction. <u>Ordlock v.</u>

5    <u>Franchise Tax Bd.</u>, 38 Cal.4th 897, 906 (2006). Administrative

6    decisions of the California State Board of Equalization of which

7    this Court is aware support the FTB's position.[7] <u>See</u> Appeal of

8    Robert and Marilyn Elliott, Case No. 310555, 2006 WL 2056117 (Cal.

9    St. Bd. Eq. July 18, 2006)(finding that, where the date prescribed

10   for payment of the tax was April 15, 2004, and the FTB's first

11   contact in writing with the taxpayer was a Notice of Determination

12   sent on October 6, 2004, that interest began to accrue on April 15,

13   2004). The assessment of interest on a tax deficiency is

14   mandatory. Cal. Rev. & Tax. Code § 19101(a); Appeal of Amy M.

15   Yamachi, 77-SBE-095, June 28, 1977). Interest is not a penalty but

16   is simply compensation for a taxpayer's use of money after the due

17   date of the tax. Appeal of Audrey C. Jaegle, 76-SBE-070, June 22,

18   1976). "[T]here is no statutory authority for the abatement of

19   mandatory interest that accrued prior to respondent's first written

20   contact ... with appellant regarding the tax deficiency." Appeal

21   of Monkee Business, LLC, Case No. 317411, 2006 WL 864345, (Cal. St.

22   Bd. Eq. March 28, 2006).

23       The Court agrees with the FTB that a deficiency is "part and

24   parcel" of Debtor's liability for the 1991 state income tax, the

25

26       [7] The Court brought these cases to the attention of the
     parties in the May 21 Order. Although Debtor responded to the May
27   21 Order to suggest additional issues to be addressed by the
     Court's decision, Debtor did not provide citations to, or arguments
28   in favor of, other cases with different holdings. <u>See</u> Debtor's
     Statement of Clarification.

1  last date prescribed for payment of which was April 15, 1992.

2  Accordingly, the Court rejects Debtor's contentions, finding that

3  § 19101(a) controls this issue.  In accordance with § 19101(a),

4  interest begins to accrue from the due date of the tax, which in

5  this case is April 15, 1992 -- whether or not the tax at issue is a

6  deficiency assessment.

7      The Court's decision on this issue regarding Debtor's

8  California state income tax is also consistent with Federal

9  treatment of the same issue.  The analogous Federal statute is

10 virtually identical:

11      If any amount of tax imposed by this title (whether
        required to be shown on a return, or to be paid by stamp or
12      by some other method) is not paid on or before the last
        date prescribed for payment, interest on such amount at the
13      underpayment rate established under section 6621 shall be
        paid for the period from such last date to the date paid.
14

15 26 U.S.C. § 6601(a).  The last date prescribed for payment of a tax

16 is generally the due date for the return on which the tax is

17 reported, without regard to any extension of time for filing the

18 return.  See 26 U.S.C. § 6601(b); May Dep't Stores Co. v. United

19 States, 36 Fed.Cl. 680, 683 (1996).

20      The Federal treatment of interest on tax deficiencies appears

21 to be the same as under California law.  The Second Circuit has

22 construed IRC § 6601(a) to mean that "interest shall begin running

23 when a tax becomes both due and unpaid." Avon Prods., Inc. v.

24 United States, 588 F.2d 342, 344 (2d Cir. 1978).  When a tax return

25 indicates an underpayment, "the IRS may assess interest from the

26 original due date of the return." May Dep't Stores, 36 Fed.Cl. at

27 683.  Interest is "not a penalty, but is intended only to

28 compensate the Government for delay in the payment of a tax." Avon

MEMORANDUM DECISION ON DEBTOR'S
OBJECTION TO CLAIM OF FTB

at 343.  Interest on a deficiency accrues from the date the original tax was due, even if the deficiency is not created until a later adjustment is made -- such as when an corporation receives approval by the IRS to change its accounting method.  <u>Anderson Columbia Co., Inc. v. United States</u>, 54 Fed.Cl. 756 (2002).  In such instances, where the taxpayer argues the event which later creates the deficiency should be the trigger for the accrual of interest, <u>Anderson Columbia</u> explains:

> Although plaintiff's argument has some logical appeal, it is ultimately unpersuasive because it misconstrues the purpose of assessing interest on unpaid taxes.  "Congress intended the United States to have the use of the money lawfully due when it becomes due."  <u>Manning v. Seeley Tube & Box Co. Of New Jersey</u>, 338 U.S. 561, 566, 70 S. Ct. 386, 94 L.Ed. 346 (1950).  If tax is not properly paid, interest is assessed to compensate for the Government's loss of use of the money, irrespective of the reason for the late payment.  <u>See</u> <u>Suffness v. United States</u>, 974 F.2d 608, 610 (5th Cir. 1993).

<u>Id</u>. at 758.  Interest on assessments under the Internal Revenue Code are mandatory.  26 U.S.C. § 6601; <u>Ghandour v. United States</u>, 37 Fed.Cl. 121, 127 (1997).  "Unless a statutory exception applies, neither the IRS nor the courts have discretion to excuse a taxpayer from payment of interest."  <u>Anderson Columbia Co., Inc. v. United States</u>, 54 Fed.Cl. at 758 (<u>citing</u> <u>Johnson v. United States</u>, 602 F.2d 734, 738 (6th Cir. 1979)).

Application of the Federal rules can be seen in <u>In re Harker</u>, 286 B.R. 84 (B.A.P. 8th Cir. 2002).  Debtors who had pled guilty to income tax evasion relating to tax years 1985 and 1986 had income tax deficiencies of $17,080 for 1985 and $135,662 for 1986, respectively.  In <u>Harker</u>, the Eighth Circuit BAP held that Internal Revenue Code § 6601 provided for interest on tax deficiencies from the due date until the date of payment and established the basis

for calculating the interest due as the last date prescribed for payment until the date paid. The <u>Harker</u> court found that the last date prescribed for payment of the 1985 tax deficiency was April 15, 1986, and the last date for payment of the 1986 tax was April 15, 1987. <u>Harker</u>, 286 B.R. at 92. Accordingly, the Eighth Circuit BAP found it proper to assess interest on those deficiencies from the last date prescribed for payment -- in both instances, from April 15 of the year following the tax year at issue.[8] <u>Id</u>.

To the extent that policy considerations are validly taken into account, the Court's decision is consistent with sound tax policy. If the Court adopted Debtor's position, taxpayers would be rewarded for filing inaccurate tax returns. For example, assume Taxpayer A and Taxpayer B owe the same amount of taxes. Taxpayer A correctly filed her tax return noting an amount owing, but did not pay that amount when her return was filed. Taxpayer B did not think any amount was owing but made an honest mistake, which the IRS or FTB finds. Under Debtor's position, Taxpayer B's good faith mistake would allow her to avoid a portion of the interest that Taxpayer A would have to pay.

Alternatively, perhaps Taxpayer B did not make an honest mistake, but rather intentionally under-reported her taxes in hopes of avoiding a portion of her taxes and/or interest thereon. While there is no indication that Debtor's error was anything but an honest mistake in this case, the position advocated by Debtor would encourage intentional under-reporting. Under Debtor's position, the same taxpayer would have a strong incentive to file a return

_____

[8] The taxes at issue in <u>Harker</u> were clearly deficiencies, as are those at issue in this case. <u>See Harker</u>, 286 B.R. at 88.

MEMORANDUM DECISION ON DEBTOR'S
OBJECTION TO CLAIM OF FTB

1  indicating that no tax was owing, and wait until the taxing
2  authority discovers the taxpayer's error.  Even if one tax
3  authority makes a change or correction to the taxpayer's gross
4  income -- as the IRS did here -- the taxpayer would still have a
5  strong incentive not to report the correction to the other taxing
6  authorities -- such as the FTB in this case -- even though the
7  taxpayer is required by statute to do so.  The taxpayer would,
8  under Debtor's theory, not become liable for interest on the taxes
9  owing until an NPA issued by each taxing authority became final.
10 In addition, the taxpayer would benefit from the significant
11 possibility that the taxing authorities would never discover the
12 error.  This would encourage taxpayer mischief, a result this Court
13 is compelled to avoid.  For the courts to be required to determine
14 whether taxpayers made honest mistakes or intentionally under-
15 reported their taxes would require extensive evidentiary hearings
16 with respect to virtually every tax deficiency claim.  This is
17 simply unworkable.  Sound tax policy dictates that the level of
18 understanding and/or motivations of the taxpayer should not control
19 the amount of taxes or interest owed.

20     In either of these scenarios, whether through honest mistake or
21 mischief, Taxpayer B would be rewarded with an unfair advantage
22 over Taxpayer A.  Allowing Taxpayer B to delay the accrual of
23 interest "misconstrues the purpose of assessing interest on unpaid
24 taxes." Anderson Columbia, 54 Fed.Cl. at 758.  With respect to
25 both Taxpayer A and Taxpayer B, the taxing authority is denied the
26 use of the funds due with the tax return.  "The tax code does not
27 contemplate the interest-free use of government funds." Holland v.
28 United States, 873 F.2d 1321, 1322 (9th Cir. 1989).  As noted above,

"[i]f tax is not properly paid, interest is assessed to compensate for the Government's loss of use of the money, *irrespective of the reason for the late payment*." <u>Anderson Columbia</u>, 54 Fed.Cl. at 758 (emphasis added).

B. <u>Priority Status of FTB's Claim and Interest Thereon</u>

Taxes assessed within the 240-day period prior to the filing of the petition are accorded priority status. 11 U.S.C. § 507(a)(8)(A). As a matter of law, the tax in this case was assessed on March 8, 1996, the date the NPA became final under state law. <u>In re King</u>, 961 F.2d 1423, 1427 (9th Cir. 1992). Due to the tolling effects of Debtor's first chapter 13 filing,[9] the assessment falls within the 240-day period prior to Debtor's bankruptcy filing in the instant case, and the taxes at issue are entitled to priority under 11 U.S.C. § 507(a)(8)(A).

The difficult factual circumstance presented by this case is that the interest sought as a part of the FTB's claim accrues from April 15, 1992 -- nearly four years before the NPA became final on March 8, 1996. Debtor has argued that the FTB "can't have it both ways." Debtor argues that the FTB cannot rely upon the fact that the NPA did not become final until March 8, 1996 for the purposes of achieving priority status for its class, but rely upon April 15, 1992 as the date for assessing interest. Per Debtor's argument, if the NPA had been timely issued, then the FTB's entire claim would fall *outside* the priority period and would simply be a general unsecured claim which could be discharged. Instead, Debtor asserts she is now unfairly faced with both a priority claim and a sizeable

---

[9] Debtor's first bankruptcy case was pending from July 15, 1996 to January 7, 1999.

1   interest component.  Debtor argues that only interest that accrued

2   in the priority period should be paid on that basis.

3       While Debtor's arguments are compelling, the law is simply not

4   in her favor on this issue.  As noted above, <u>King</u> dictates that the

5   FTB's claim be afforded priority status.  While it may seem, and in

6   fact be, unfair to afford priority status to the interest portion

7   of the FTB's claim that predates the finality of the NPA, interest

8   is a mandatory component of the tax owed -- not an independent

9   liability that can be afforded separate treatment.  Just as a

10  deficiency assessment is "part and parcel" of the underlying tax

11  debt, so is the interest on that deficiency.

12  C.  <u>Abatement of Interest on FTB's Claim</u>

13      Finally, Debtor argues that Cal. Rev. & Tax Code § 19104(a)

14  requires the abatement of the interest portion of the FTB's claims

15  that accrued prior to March 18, 1996, when the NPA became final.

16  For the reasons states in subsection A above, Debtor's argument

17  must fail.  As noted by the California State Board of Equalization:

18  "[T]here is no statutory authority for the abatement of mandatory

19  interest that accrued prior to respondent's first written contact

20  ... with appellant regarding the tax deficiency."  Appeal of Monkee

21  Business, LLC, Case No. 317411, 2006 WL 864345, (Cal. St. Bd. Eq.

22  March 28, 2006).

23  ///

24  ///

25  //

26

27

28

IV.

CONCLUSION

For the reasons set forth above, Debtor's Objection to the FTB's claim is overruled. Counsel for the FTB shall submit an order so providing, after review by Debtor's counsel as to form.

Dated: 10/16/07

_Arthur S. Weissbrodt_
ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

MEMORANDUM DECISION ON DEBTOR'S
OBJECTION TO CLAIM OF FTB

# Court Service List

Office of the U.S. Trustee
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA  95113-3004

Office of the Chapter 13 Trustee
Devin Derham-Burk, Chapter 13 Trustee
P.O. Box 50013
San Jose, CA  95150

Susan D. Silveira, Esq.
Law Office of Susan Silveira
1177 Branham Lane #420
San Jose, CA  95118

Paul D. Gifford
Deputy Attorney General
P.O. Box 70550
Oakland, CA 94612-0550

Patricia Romano
6559 Turnstone Way
Rocklen, CA 95765

Patricia Vignola
598 Shoal Circle
Redwood Shores, CA 94065-2240

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM DECISION ON DEBTOR'S
OBJECTION TO CLAIM OF THE